UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAMES SCHNITTER,

                                  Plaintiff,

                                                                                       <u>DECISION AND ORDER</u>

                                                                                        11-CV-6026L

                                v.

CITY OF ROCHESTER,
INVESTIGATOR IACUTONE,
SERGEANT DE BELLIS,
MONROE COUNTY,
MICHAEL GREEN,
ASSISTANT DISTRICT ATTORNEY
GRACE CARDUCCI,

                                  Defendants.
_____

       Plaintiff James Schnitter brings this action under 42 U.S.C. § 1983, against the City of Rochester, New York ("City"), Rochester Police Department ("RPD") Investigator Albert Iacutone, RPD Sergeant Anthony DeBellis (collectively "City defendants"), Monroe County, former Monroe County District Attorney ("DA") Michael Green, and Assistant District Attorney ("ADA") Grace Carducci (collectively "County defendants").

       Plaintiff's claims arise out of his 2007 arrest and prosecution on charges of first-degree sexual abuse and endangering the welfare of a child. Those charges were based on a complaint made by plaintiff's estranged wife, concerning an incident that she alleged had occurred in December 2006, in which plaintiff allegedly engaged in sexual contact with his then-three-year-old daughter.

       Plaintiff was indicted on those charges in February 2007. At some point, he moved to dismiss the indictment, apparently based on exculpatory evidence that had been turned over by ADA

Carducci in September 2007.  Complaint ¶ 38, 41.  The state court granted the motion in January 2008.  Complaint ¶ 46.

Plaintiff commenced this action in January 2011.  He asserts claims for (1) malicious prosecution, false arrest and false imprisonment, (2) "14th Amendment deprivation of liberty without due process of law by withholding material exculpatory and impeachment evidence, and deliberately failing to conduct a constitutionally adequate investigation," and (3) supervisory liability against Green.  Plaintiff seeks damages in an unspecified amount.

In support of his claims, plaintiff alleges that Carducci and Iacutone simply relied unquestioningly on the allegations made by plaintiff's wife, and failed to take steps to attempt to verify her accusations.  Plaintiff contends that they had a duty to do so because his wife's credibility was undermined by her history of psychiatric problems, her evident hostility toward plaintiff, the inconsistencies in her allegations, and the lack of corroboration of her allegations from both a physical examination and an interview of plaintiff's daughter, the alleged victim.

Plaintiff further alleges that the indictment against him "was the product of fraud, perjury, and misrepresentation."  Complaint ¶ 35.  While the complaint does not say so expressly, plaintiff is apparently alluding to his wife's false accusations.  Plaintiff does not appear to allege that defendants themselves made any perjurious or fraudulent statements in connection with the indictment itself.[1]

---

[1] Plaintiff does allege that Carducci falsely stated in August 2007–more than six months after plaintiff's indictment–that she had "provided the [state] Court the minutes of the Grand Jury proceeding on February 14, 2006," when in fact she did not provide the grand jury minutes until September 10, 2007.  Complaint ¶¶ 37, 38.  If Carducci did make such a statement, however, it seemingly would have been obvious to all concerned that she had misspoken, since the alleged incident involving plaintiff and his daughter did not occur until December 2006.  Complaint ¶ 17.  Carducci's alleged statement about providing grand jury minutes in February 2006 could hardly have been calculated to deceive anyone, then, nor is it apparent how that misstatement could have affected plaintiff's rights.  In any event, Carducci's alleged statement could not provide a basis for plaintiff's allegation that the indictment itself was the product of fraud or misrepresentation.

The complaint also alleges that Carducci failed to turn over exculpatory material to plaintiff, as required by *Brady v. Maryland*, 373 U.S. 83 (1963). Plaintiff alleges that his then-attorney eventually obtained, by means of subpoena, certain documentary evidence, including his wife's psychiatric records and his daughter's hospital records, that formed the basis for plaintiff's successful motion to dismiss the indictment. Complaint ¶¶ 40-44. Carducci did not file a written response to that motion, allegedly stating on the record that she could not "factually dispute anything contained in defendant's motion papers." Complaint ¶ 47.

As to the City, plaintiff alleges that the City "had a custom, policy or pattern and practice of failing to adequately investigate cases, and to withhold material exculpatory and impeachment evidence from prosecutors." Complaint ¶ 48. Plaintiff alleges that there were "many cases" involving such "unlawful practices of [the City's] police officers and investigators," yet the City did nothing to rectify those practices. Complaint ¶ 49. Plaintiff further alleges that the City had a custom or policy of failing to train or supervise its officers with respect to rape investigation techniques, including "pressuring witnesses to make false identifications, falsifying inculpatory evidence," and other matters. Complaint ¶ 50.

Plaintiff makes similar allegations about the DA's office, alleging that it had a custom and policy of "bad faith withholding of access to exculpatory evidence" and failing to adequately train and supervise ADAs in that regard. Complaint ¶¶ 51-53.

Based on these allegations, plaintiff asserts three causes of action. The first cause of action asserts claims of malicious prosecution, false arrest and false imprisonment. The complaint does not state whether this cause of action is directed against any particular defendants, but alleges that "[p]rosecutors withheld, to the last minute, grand jury minutes that contained exculpatory facts that vitiated probable cause against Plaintiff," and that "[n]o reasonable officer, given the estranged wife's mental background, would not have inquired further and investigated further her claims of sexual assault against her own child." Complaint ¶¶ 59, 60.

The second cause of action asserts a claim of "14th Amendment deprivation of liberty without due process of law by withholding material exculpatory and impeachment evidence, and deliberately failing to conduct a constitutionally adequate investigation." Complaint at 12. Plaintiff alleges that "[d]efendants fabricated inculpatory evidence, failed to follow leads regarding the mental state of the estranged wife, withheld material exculpatory and impeachment evidence from prosecutors, and deliberately failed to conduct a constitutionally adequate investigation ... ." Complaint ¶ 65. Plaintiff further alleges that "[in] the drive to secure a conviction against Plaintiff," defendants failed to conduct a thorough investigation because they knew that such an investigation would have uncovered evidence that would have exonerated plaintiff. Complaint ¶ 66.

The third cause of action (which is erroneously denominated as the fourth) asserts a claim, apparently against Green only, alleging that he was grossly negligent, reckless or deliberately indifferent in failing to provide adequate training and supervision with respect to the ADAs in his office, which led to Carducci's alleged misconduct and violation of plaintiff's rights. Complaint ¶¶ 72-74. Plaintiff seeks compensatory and punitive damages, in unspecified amounts, prejudgment interest, and attorney's fees.

## DISCUSSION

**I. County Defendants' Motion**

The County defendants contend that both Green and Carducci are protected by absolute prosecutorial immunity. "[I]t is well settled that prosecutors are entitled to absolute immunity against Section 1983 claims, for actions performed in the course of their prosecutorial duties, including but not limited to the presentation of evidence to grand juries and participation in criminal trials." *Brown v. Ontario County*, 787 F.Supp.2d 273, 277 (W.D.N.Y. 2011) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976), and *Barrett v. United States*, 798 F.2d 565, 571-72 (2d Cir. 1986)).

The Supreme Court has also "made clear that absolute immunity may not apply when a prosecutor is not acting as 'an officer of the court,' but is instead engaged in other tasks, say, investigative or administrative tasks." *Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (citing *Imbler*, 431 U.S. at 431 n.33). A prosecutor who engages in such activities is protected instead only by qualified, good-faith immunity. *Sclafani v. Spitzer*, 734 F.Supp.2d 288, 296 (E.D.N.Y. 2010) (citing *Van de Kamp*).

The law is clear, however, that a prosecutor's failure to disclose exculpatory evidence is protected by absolute immunity. *See Lawlor v. Connelly*, 471 Fed.Appx. 64, 65 (2d Cir. 2012) (stating that "[t]his Court has repeatedly held ... that a prosecutor is absolutely immune from liability under 42 U.S.C. § 1983 for his conduct before a grand jury" and that "this Court has specifically held that a prosecutor is immune from § 1983 liability for withholding exculpatory evidence from a grand jury") (citations omitted); *see also Warney v. Monroe County*, 587 F.3d 113, 125 (2d Cir. 2005) ("if the prosecutors had tested all the evidence, and then sat on the exculpatory results for at least 72 days, they may well have violated *Brady v. Maryland*, 373 U.S. 83 (1963); but they would be absolutely immune from personal liability").

Plaintiff here attempts to cast this claim in terms of an alleged failure to conduct a thorough investigation, but that does not render the complained-of conduct "investigatory" in nature. At bottom, plaintiff's claim rests upon the prosecutor's decision to charge plaintiff with a crime. That is a quintessentially prosecutorial task. *See Stein v. Disciplinary Bd. of Supreme Court of New Mexico*, 520 F.3d 1183, 1194 (10th Cir. 2008) ("Deciding whether to bring charges–which necessarily includes an evaluation of whether there has been sufficient investigation to support charges–is a quintessential prosecutorial function protected by absolute immunity") (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).

Plaintiff also alleges in his second cause of action that "[d]efendants fabricated inculpatory evidence," Complaint ¶ 65, but there is not one factual allegation anywhere in the complaint to support that assertion. Rather, the complaint alleges only that "ADA Carducci relied solely on the

wife's testimony" and "failed to make a further inquiry to investigate the estranged wife's allegations, corroborate them, or investigate Plaintiff's claims that he was innocent." Complaint ¶¶ 27, 34.

I recognize that a plaintiff need not plead evidence to state a facially valid claim, but there must still be enough facts alleged to apprise the defendants of what it is they are alleged to have done, so that they can frame a meaningful response. As the Second Circuit has put it, "notice pleading supported by facially plausible factual allegations is all that is required–nothing more, nothing less." *In re Morgan Stanley Information Fund Securities Litigation*, 592 F.3d 347, 358 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 678 (2009)). *See also Bell Atlantic Corp. v. Twombly*, 550 US. 544, 557 (2007) ("naked assertion[s]" devoid of "further factual enhancement" are insufficient to state a claim).

The bald assertion that defendants fabricated evidence, then, is insufficient without *some* allegations concerning the nature of the alleged fabrications. Plaintiff's "threadbare recital[] of the elements of a cause of action" are not enough, *Iqbal*, 556 U.S. at 678, and his claims against Carducci and Green are therefore dismissed. *See Zembiec v. County of Monroe*, 766 F.Supp.2d 484, 498 (W.D.N.Y. 2011) ("plaintiff's conclusory allegations that [the county sheriff] and the County maintained a policy of publishing confidential medical records and retaliating against employees, absent some factual allegations in support of those assertions, also render these claims defective and subject to dismissal") (citing cases), *aff'd*, 468 Fed.Appx. 39 (2d Cir. 2012).

Plaintiff's claim against Green based on his alleged failure to train or supervise the ADAs under him also fails. To state a claim under § 1983 for failure to train, a complaint must allege that the supervisor's failure to train his employees amounts to "'deliberate indifference to the rights of persons with whom the [employees] c[a]me into contact.'" *Connick v. Thompson*, ___ U.S. ___, 131 S.Ct. 1350, 1359 (2011) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (first alteration in original)).

Plaintiff does allege that Green "acted with gross negligence, recklessness, and/or deliberate indifference to the constitutional rights of citizens by failing to provide adequate training ... ." Complaint ¶ 72. Variations of that allegation are sprinkled throughout the complaint, but the complaint is devoid of any particulars supporting that conclusory assertion.

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 131 S.Ct. at 1360 (quoting *Bryan Cty.*, 520 U.S., at 409, ). While the Supreme Court has left open the possibility that a single incident could give rise to liability for failure to train or supervise, the Court has cautioned that only a "narrow range" of circumstances would support such single-incident liability, where the "unconstitutional consequences of failing to train [were] patently obvious ... ." *Connick*, 131 S.Ct. at 1361. No allegations supporting either theory have been pleaded here.

In any event, such a claim cannot be predicated on boilerplate allegations of the sort presented in this case. Plaintiff has simply tacked on an allegation that the alleged violation of his constitutional rights was due in part to a failure to train, supervise, etc., on the part of Green. That sort of "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice." *Iqbal*, 556 U.S. at 678. *See Bennett v. Washington*, No. 11-176, 2013 WL 140104, at *7 (E.D.Pa. Jan. 10, 2013) (since amended complaint contain[ed] no allegations that [supervisor] had notice that [nurse's] training was 'deficient in a particular respect,'" it "fail[ed] to allege a plausible claim that [supervisor] was deliberately indifferent to the need to train her nurses to recognize when an injured inmate needed a doctor's examination) (quoting *Connick*, 131 S.Ct. at 1360); *Matos v. City of New York*, No. 10-CV-4558, 2012 WL 7160430, at *6 (E.D.N.Y. Dec. 3, 2012) (plaintiff's allegations that defendant City "exercised deliberate indifference by failing to take remedial action," and that it "failed to properly train, retrain, supervise, discipline, and monitor the officers," were "merely boilerplate conclusions that d[id] not provide support for his claims," and his allegation that City was aware from "notice[s], claims, and lawsuits" of police detective's propensity to commit constitutional violations was a "legal conclusion

couched as a factual allegation," which "provide[d] no 'factual amplification' from which this court could plausibly infer that the City's deliberate indifference caused plaintiff's injuries") (quoting *Missel v. County of Monroe*, 351 Fed.Appx. 543, 546 (2d Cir. 2009)); *Gaymon v. Esposito*, No. 11-4170, 2012 WL 1068750, at *9 (D.N.J. Mar. 29, 2012) ("Given that a municipality's culpability for a deprivation of rights 'is at its most tenuous where a claim turns on a failure to train,' this Court finds that, given the limited factual support for Plaintiffs' failure to train claim, it cannot survive a motion for judgment on the pleadings") (quoting *Connick*, 131 S.Ct. at 1359).

To the extent that plaintiff's claims against Green and Carducci are asserted against them in their official capacities, they are also barred by the Eleventh Amendment. In their role as prosecutors, Green and Carducci "acted, in all relevant respects, on behalf of New York State, which itself is immune under the Eleventh Amendment." *Doe v. Green*, 593 F.Supp.2d 523, 535 (W.D.N.Y. 2009). That immunity extends to them, in their official capacities, as well. *Id.*

Plaintiff's claims against the County must also be dismissed. For one thing, the complaint does not adequately allege that the purported violations of plaintiff's rights were due to any customs or policies of the County, for the same reasons stated with respect to Green's supervisory liability.

Aside from that, however, the County cannot be held liable for Green's and Carducci's actions, because Green and Carducci acted on behalf of New York State. As this Court has previously explained, "the case law is clear that a county in New York cannot be held liable for the prosecutorial acts of a district attorney, because the DA acts in that capacity on behalf of the state, not the county." *Id.* at 534 (collecting cases). In *Green*, the Court dismissed a claim alleging that the defendant county maintained certain policies or customs concerning grand jury investigations and prosecutions of certain types of crimes, on the ground that those "were not policies of the County–which lacked the authority to set such policies–but policies of the DA, acting on behalf of New York State." *Id.* The same reasoning applies here.

**II. City Defendants' Motion**

Plaintiff's claims against the City defendants (the City, Investigator Iacutone, and Sgt. DeBellis) are also subject to dismissal. Since Iacutone and DeBellis ("the officers") were not directly involved in the decision to prosecute plaintiff, the claim against them is essentially a claim for false arrest. "A § 1983 claim for false arrest ... is substantially the same as a claim for false arrest under New York law." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). Under New York law, an action for false arrest requires that the plaintiff show that "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975).

"Probable cause 'is a complete defense to an action for false arrest' brought under New York law or § 1983." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Weyant*, 101 F.3d at 852). "Probable cause to arrest exists when the officers have ... reasonably trustworthy information as to [ ] facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been ... committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). "In deciding whether probable cause existed for an arrest, we assess 'whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest.'" *Ackerson*, 702 F.3d at 19 (quoting *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006)).

Even if a complaint states an otherwise viable false arrest claim, "[q]ualified immunity is a complete defense to false arrest claims. An arresting officer is entitled to qualified immunity even when ... probable cause to arrest does not exist, 'if he can establish that there was "arguable probable cause" to arrest.'" *Ackerson*, 702 F.3d at 21 (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (internal quotation marks omitted).

In the case at bar, plaintiff's wife reported that she had witnessed plaintiff subject their three-year-old daughter to sexual contact. Complaint ¶¶ 18, 19. Although the daughter herself allegedly denied any such contact, given her age, it was not unreasonable for the officers to rely on the statements of the child's mother, who claimed to have seen the sexual contact. Eyewitness testimony will generally give rise to probable cause, absent an obvious reason to doubt the witness's veracity, and police officers have no duty to search for exculpatory evidence, or to go to great lengths to determine whether the accuser's credibility might be called into question, absent some obvious reason to doubt her. *See Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006); *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). *See also Rhodes v. Tevens*, No. 07-CV-471, 2012 WL 777421, at *6 (W.D.N.Y. Mar. 7, 2012) (officers "were not obligated to pursue every lead or engage in extensive fact-finding regarding the complainant's credibility") (citing *Gisondi v. Town of Harrison*, 72 N.Y.2d 280, 285 (1988)).

I also note that the complaint alleges that plaintiff was arrested on the same day, February 7, 2007, that the indictment was returned. Complaint ¶¶ 26, 35. Although plaintiff alleges that his wife's accusations were false, there are no allegations indicating that the officers engaged in any fraudulent or bad-faith conduct themselves, and they were therefore "entitled to rely on the presumption of probable cause arising from the Indictment when arresting" plaintiff. *Blasini v. City of New York*, No. 11 Civ. 3022, 2011 WL 6224605, at *5 (S.D.N.Y. Dec. 14, 2011). *See also Dale v. Kelley*, 908 F. Supp. 125, 138 (W.D.N.Y. 1995) (village police chief's reliance on district attorney's "relatively more expert opinion that probable cause existed was objectively reasonable as a matter of law"), *aff'd*, 95 F.3d 2 (2d Cir. 1996).

Plaintiff's claims against the City fare no better than his claims against the County. Plaintiff has made only conclusory allegations concerning the City's alleged failure to train and supervise its employees in the RPD, and as stated, such "formulaic recitation[s] of the elements of a cause of action" are insufficient to state a claim. *Iqbal*, 556 U.S. at 678.

None of plaintiff's claims, then, can survive a motion to dismiss. In so ruling, the Court does not minimize the harm allegedly done to plaintiff if he was falsely accused of sexually molesting his own daughter. But for the reasons stated above, these defendants cannot be held liable for that harm. Plaintiff's complaint must therefore be dismissed.

## CONCLUSION

Defendants' motions for judgment on the pleadings (Dkt. #13, #21, #32) are granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      March 5, 2013.